Paul STANFIELD, Appellant,

v.

The STATE of Texas, Appellee.

No. 755–82.

Court of Criminal Appeals of Texas, En Banc.

Oct. 22, 1986.

William K. Clary and Durant F. Clements (on appeal only), Bridgeport, for appellant.

Brock Smith, Dist. Atty., Decatur, Robert Huttash, State's Atty., Alfred Walker, First Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

This a probation revocation case in which dates become significant. On October 20, 1980, a motion to revoke probation was filed, alleging *inter alia*, that appellant committed the offense of forgery by passing and that he failed to pay his monthly probation fee for September and October 1980. Pursuant to a hearing on that motion the trial court revoked his probation January 18, 1981.

Having once harmonized two 1977 versions of § 8(c), Article 42.12, V.A.C.C.P., in *Jones v. State*, 589 S.W.2d 419 (Tex.Cr. App.1979), the Court is now confronted with an opinion by a court of appeals that has the effect of disharmonizing them. *Stanfield v. State*, 638 S.W.2d 127 (Tex.

App.—Fort Worth 1984). We granted review primarily to address that matter and secondarily to determine whether evidence is sufficient to support a finding that appellant violated a condition of probation by committing forgery. See Tex.Cr.App. Rule 302(c)(3), now Tex.R.App.Pro. Rule 200(c)(3). Since the opinion on original submission garnered a mere plurality, we now grant the State's motion for rehearing. The original opinion is withdrawn.

### 1.

### *Section 8(c)*

The opinion of the Fort Worth Court on original submission focused on a version of § 8(c) that appears to require a probationer to assert as an affirmative defense and to prove by a preponderance of evidence inability to pay "where non-payment of fees is the *only* ground upon which revocation is sought," and found that since here "revocation was sought on two grounds," the State "was required to prove that the appellant had the ability to pay *and* that he intentionally failed to pay." *Stanfield*, supra, at 128–129.[1] Thus it seems to have overlooked the fact that at all pertinent times in this cause there were two subsections (c) in § 8, supra. One provided that in a probation hearing where "it is alleged *only* that the probationer violated the conditions of probation by failing to pay [certain prescribed fees, costs et cetera], the inability of the probationer to pay ... is an affirmative defense to revocation, which the probationer must prove by a preponderance of the evidence." Except that the other omitted "only," textually it was the same for our purposes here.[2]

---

1. Emphasis added in original opinion of Fort Worth Court. All other emphasis is supplied by the writer of this opinion throughout unless otherwise indicated.

2. Acts 1981, 67th Leg., Ch. 538, p. 2246, § 2 melded both versions into one, retaining "only." But that enactment would not control a revocation on January 18, 1981, since it did not become effective until June 12, 1981. Furthermore, although not raised in this cause, we note that in other circumstances Article 42.12, § 8(c) may be constitutionally questionable in light of *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064,

76 L.Ed.2d 221 (1983). There the Supreme Court held that where revocation of probation is sought because of nonpayment of fine and restitution a sentencing court must inquire into reasons for failure to pay, for without such an inquiry, the court "would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine," contrary to fundamental fairness required by the Fourteenth Amendment. *Id.,* at 672–673, 103 S.Ct. at 2073. However, as the Fort Worth Court found, in the instant cause inability "was never an issue," *Stanfield,* supra, at 130.

On motion for rehearing, however, the State called attention to the dual 1977 amendments. The Fort Worth Court found they "were compatible and presented no conflict," but went on to reason that since neither addressed "the long standing requirement that the State must prove that probationer's failure to pay fees was *intentional* [,] that requirement still exists;" further finding that the State "offered no evidence that appellant intentionally failed to pay two of the seventeen monthly fees," the court concluded the evidence was not sufficient to support that allegation. *Stanfield*, supra, at 120–130 (emphasis added in original). For reasons about to be developed, we agree the two provisions are reconcilable and that nonpayment of fees must be intentional, but we will find the evidence sufficient to support an intentional failure to pay.

### A.
#### *"Only"*

On original submission the Fort Worth Court of Appeals construed what must have been the 1981 § 8(c) in such a way as to restrict an affirmative defense to a motion to revoke that complains of nothing more than a failure to pay one or more fees prescribed as a condition of probation. If violation of one or more other conditions is alleged, an effect of that construction is to return to former days when the State had the burden to prove a probationer had ability to pay and intentionally failed to do so. *Herrington v. State*, 534 S.W.2d 331, 333–334 (Tex.Cr.App.1976); *Hardison v. State*

450 S.W.2d 638, 639 (Tex.Cr.App.1970); *Jones v. State*, supra, at 420. Because the Legislature did not intend the consequences of such an irrational construction with respect to "ability to pay," we must disapprove it, and relieve the State of that part of its former burden.

On motion for rehearing, remarking that "by seeming inadvertence" the Legislature enacted both versions of § 8(c), the Fort Worth Court was content to follow the opinion of the Court in *Jones v. State*, supra, finding them "reconcilable." Since *Jones* is itself somewhat cryptic, an explication is in order.

█ Germane to judicial ascertainment of legislative intent are such matters as surrounding circumstances, legislative history, caption of the act and consequences of a particular construction, as well as a legislative mandate to reconcile, if possible, amendments to the same statute enacted at the same session. Code Construction Act, V.T.C.A. Government Code, §§ 311.023 and 311.025.[3]

The legislative history of Acts 1977, 65th Leg., Ch. 342, p. 909, § 2, reveals that its genesis is Senate Bill 32. In pertinent part its caption informs the act relates to payment of fees et cetera, "defense in revocation hearing ... and adding Subsection (c) to Section 8, Article 42.12 ..." With some difficulty, it passed the Senate March 17, 1977. In the House of Representatives, not until consideration on second reading was "only" inserted by way of a floor amendment, without any reported explanation. House Journal, p. 2467.[4] Thereafter, Senate Bill 61, the other version of § 8(c),

---

**3.** One concern here is with legislative use of the word "only." As a general proposition it is well and good that words and phrases be "read in context and construed according to the rules of grammar and common usage." Code Construction Act, supra, § 311.011. However, "a [most] common writing error is the innocuous word 'only.'" LeClercq, Trouble Spots: "That/Which" and "Only," 48 Texas Bar Journal (October 1985) 1104, 1105. See also Fowler, A Dictionary of Modern English Usage (Second Edition) Oxford University Press (1965) 418–419. Working with the statement "The man only died a week ago," regarding common usage of "only," Fowler observes:

"[T]here is an orthodox position for the adverb, easily determined in case of need; to choose another position that may spoil or obscure the meaning is bad; but a change of position that has no such effect except technically is not only justified by historical and colloquial usage but often demanded by rhetorical needs."

In addition to problems in placing it, "only" also has several meanings, including "at the very least."

**4.** On third reading the bill failed to pass, being laid on the table, *id.*, at 2576. Finally, on May 28, close to adjournment, S.B. 32 was again taken up; after reducing its proposed $25 pro-

was considered. Its caption says the act related, *inter alia,* to "defense in a proba-tion revocation hearing to allegations of failure to pay certain amounts imposed as a condition of probation ... adding Subsec-tion (c) to Section 8, Article 42.12 ..." It passed both houses without let or hinder-ance, and was signed by the Speaker and the President May 23, 1977. See House Journal, pp. 5087 and 3928; Senate Journal, p. 1809.

Thus, while enactment of two versions of § 8(c) may be inadvertent, intent of the Legislature is clear. The fact of the mat-ter is that *Herrington v. State,* supra, had been handed down in 1976, and both radi-cally changed existing law therein affirmed regarding revocation of probation for fail-ure to pay fees ordered as a condition of probation. By making inability to pay an affirmative defense, respective burdens of proof were shifted about. *Watts v. State,* 645 S.W.2d 461, 463 (Tex.Cr.App.1983); *Champion v. State,* 590 S.W.2d 495, 498 (Tex.Cr.App.1959); *Jones v. State,* supra.

■ Given those circumstances and when legislative intent is so clear, to re-strict application of the burden of proving that affirmative defense to a hearing on a motion to revoke making "monetary allega-tions" alone produces quirky consequences that simply may not be justified on the theory that "only"—an often misused ad-verb—was inserted in one act but not in the other. Indeed, we are "bound to presume such consequences were not intended," *Newsom v. State,* 372 S.W.2d 681, 682 (Tex. Cr.App.1963); *Salas v. State,* 592 S.W.2d 653, 655 (Tex.Civ.App.—Austin 1979), no writ history; *Ex parte Wilson,* 588 S.W.2d 905, 911–912 (Tex.Cr.App.1979) (Concurring Opinion). If "only" is read in another sense, we avoid the anomalous result reached by the Fort Worth Court of Ap-peals on original submission.

## B.

### Intentional

Having concluded that when failure to pay probation fees, court costs and the like is an issue in a revocation hearing, § 8(c) is applicable regardless of whether a violation of another condition of probation is alleged, we now turn to the matter of burdens of proof.

Since 1977 the Legislature has provided that inability to make such payments is an affirmative defense for a probationer to raise and to prove by a preponderance of evidence. *Watts, Champion* and *Jones,* supra. That is to say, the probationer has the burden of producing evidence and the ultimate burden of persuasion on the issue of inability to pay. No longer then is the State charged with a burden of demonstrat-ing affirmatively that a probationer had the financial ability to make the payment he failed to make.

In the instant cause, inability to pay was not raised by appellant. Indeed, the Fort Worth Court of Appeals found that appel-lant "was employed and had the ability to pay the fees at all times material to the case." *Stanfield,* supra, at 128. He testi-fied that he "believed" he had paid the two monthly fees and that, in any event, his failure was "not intentional." Thus, *ina-bility* to pay was not an issue in the revoca-tion hearing.

But what of "intentional failure to pay?" Before 1977 that it was necessary for the State to prove a probationer had the ability to make the payments and that his failure to make them was intentional could not be gainsaid. *Jones v. State,* supra, at 420. Reading those § 8(c) amendments literally on rehearing, the Fort Worth Court empha-sized they "did not even address the long standing requirement that the State must prove that a probationer's failure to pay was *intentional.*" The same may be said of § 8(c) after 1981.

■ Removing the element of ability to pay from the State's burdens and making a matter of inability to pay an affirmative defense may well pass constitutional mus-

bation fee to $15, the House passed the bill, *id.,* at 4432. On the last day, May 30, the Senate

concurred in House amendments. Senate Jour-nal, p. 2324.

ter, especially so if the Legislature did not relieve the State of its burden to prove intentional failure to pay. See *Patterson v. New York* 432 U.S. 197, 206–206, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977). We conclude the State still has the burden of proving an alleged failure to pay fees, costs and the like was intentional.

Casting inability to pay as an affirmative defense to failure to pay means that ability to pay is considered a factor relevant to the element of intent, and we note that when inability is not raised as an affirmative defense the State has discharged its burden without difficulty. It is axiomatic that facts and circumstances attending a given act or omission may reveal intent. One who has the ability to pay that which he is required to pay but does not, without more, leaves a factfinder with a strong inference that his failure is intentional. Thus since 1979, when we reconciled the § 8(c) amendments, where ability to pay appears in the record of a revocation hearing, a finding by the convicting court that an allegation of failure to pay is sustained has been uniformly upheld by this Court, albeit without necessarily articulating the failure was "intentional." *Watts,* supra, at 463; *Champion,* supra, at 498; *Jones,* supra, at 421.

■ In the instant cause such an inference of intentional nonpayment is adequately supported. Appellant obviously knew a condition of his probation required the monthly payment; he was employed and had the financial ability to make them; he made fifteen of the seventeen payments due. From those facts the trier of fact could have easily inferred intentional failure to pay, notwithstanding appellant's professed belief that he had made the payments and that his failure was not intentional. In finding otherwise the Fort Worth Court of Appeals erred.

### 2.

#### *Forgery*

The motion to revoke appellant's probation included an allegation that he had committed the offense of forgery by passing. The allegation stems from appellant's pass-ing of a check written on his mother's checking account on which appellant forged his mother's signature. At the hearing on the motion to revoke appellant testified that he forged two other checks in the past about which his mother did not complain, that he did not intend to defraud her, that he intended to pay her back, and that he felt that since she had acquiesced in the past it was all right to do it again.

Appellant's mother testified that the check in question was hers, that she did not write it out, that she did not sign it (she recognized the handwriting as her son's), and that she did not authorize him to write out the check or cash it. Appellant's mother also testified that she had never authorized appellant to sign her name to a check in the past although she admitted that it had happened twice before and she had done nothing.

The court of appeals held that the evidence was insufficient to show appellant's intent to defraud or harm. They based this finding on the fact that appellant's mother had impliedly acquiesced to this activity in the past.

The elements of the offense of forgery by passing are listed in V.T.C.A. Penal Code, § 32.21:

"(a) For purposes of this section
  (1) 'Forge' means:
    (A) To alter, make, complete, execute or authenticate any writing so that it purports:
    (i) to be the act of another who did not authorize that act,

\*    \*    \*    \*    \*    \*

    (B) to issue, transfer, register the transfer of, pass, publish, or otherwise alter a writing that is forged within the meaning of Paragraph (A) of this subdivision;

\*    \*    \*    \*    \*    \*

(b) A person commits an offense if he forges a writing with intent to defraud or harm another."

Appellant argues that there is no evidence of his intent to defraud because of

his mother's inaction in response to two prior instances of forgery. Because of his belief, based upon his mother's account, appellant argues that he had no intent to defraud with respect to the forgery of the check in the instant case. We do not agree.

■ Appellant admitted all of the elements of the offense except intent at the hearing on the motion to revoke his probation. Appellant knew that the instrument he passed was forged. We recognize in situations like the one presented by the instant case that the proof and issues of intent to defraud and authorization are tied together. Thus, appellant's argument that he was authorized to write the check bears on his intent to defraud or harm. However, appellant's argument that his mother acquiesced in the writing of her check is rebutted by his mother's own testimony that she did not authorize appellant to write the check. This is simply a conflict of facts on the issue of authorization which is to be resolved by the trier of fact. It was certainly not an abuse of discretion to find that the act was not authorized and that appellant had the requisite intent to defraud or harm. Appellant defrauded his mother by forging and attempting to cash a check on her account without authority. Appellant defrauded the bank by attempting to cash a check that presumably contained the signature of one of their depositors.

Accordingly, the judgment of the court of appeals is reversed and the judgment of the trial court revoking appellant's probation affirmed.

W.C. DAVIS, Judge, dissenting.

The majority attempts to interpret Article 42.12, § 8(c), V.A.C.C.P., dealing with probation revocation for non-payment of fees, in such a way as to avoid what they term "quirky consequences." However, in order to achieve this they ignore the clear wording of the statute. When a statute is clearly written it should not be for us to "rewrite it." Because I believe the majority has done this I dissent.

Prior to 1977, the State, in attempting to revoke a probation for non-payment of fees, had the burden of proving by a preponderance of the evidence that: (1) the probationer did not pay the fee(s); (2) the probationer had the ability to pay the fee(s); and (3) the probationer's failure to pay was intentional. *Curtis v. State*, 548 S.W.2d 57 (Tex.Cr.App.1977); *Hardison v. State*, 450 S.W.2d 638 (Tex.Cr.App.1970).

In 1977, the 65th Legislature enacted Article 42.12, § 8(c), V.A.C.C.P., which provides that in cases where the State is seeking probation revocation for non-payment of fees, the probationer's inability to pay is an affirmative defense which he must prove by a preponderance of the evidence. Inexplicably, however, the 65th Legislature enacted two versions of § 8(c). The two sections read as follows:

(c) In a probation revocation hearing at which it is alleged *only* that the probationer violated the conditions of probation by failing to pay probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of the evidence.

Acts 1977, 65th Leg., p. 909, ch. 342 § 2, effective Aug. 29, 1977 (emphasis added).

(c) In a probation revocation hearing at which it is alleged that the probationer violated the conditions of probation by failing to pay *compensation paid to appointed counsel*, probation fees, court costs, restitution, or reparations, the inability of the probationer to pay as ordered by the court is an affirmative defense to revocation which the probationer must prove by a preponderance of the evidence.

Acts 1977, 65th Leg., p. 1058, ch. 388 § 2, effective Aug. 29, 1977 (emphasis added).

The two versions differ in that the second omitted the word "only" and added another category of payment, namely, "compensation paid to appointed counsel."

The two versions were allowed to co-exist for four years.

In 1981, the 67th Legislature solved the problem of dual enactments by passing a new Article 42.12, § 8(c), V.A.C.C.P., which embodied portions of both prior versions:

(c) In a probation revocation hearing at which it is alleged *only* that the probationer violated the conditions of probation by failing to pay *compensation paid to appointed counsel,* probation fees, court costs, restitution, or reparations. The inability of the probationer to pay as ordered by the court is an affirmative defense to revocation, which the probationer must prove by a preponderance of the evidence.

Acts 1981, 67th Leg., p. 2246, Ch. 538 § 2, effective June 12, 1981 (emphasis added).

The probation revocation hearing in the instant case was held on January 16, 1981, prior to the effective date of the 1981 new version of § 8(c) which did away with the dual enactment of 1977. Thus, the two earlier versions of § 8(c) passed in 1977 are implicated. The Court of Appeals concluded, without specifying any reason, that the first quoted 1977 versions containing the word "only" applied. Since the motion to revoke contained allegations other than appellant's failure to pay fees, i.e., appellant committed the offense of forgery by passing, § 8(c) by its own terms did not apply and appellant bore no burden to prove his inability to pay. As a result of this determination the Court of Appeals held the State to its burden established under pre-1977 case law, i.e., proof by a preponderance of the evidence of inability to pay and intentional non-payment. The Court of Appeals concluded that, while appellant's ability to pay was adequately shown, there was no evidence of intent.

I agree that the controlling version of § 8(c) is the one containing the words "only." It is clear that the 1977 Legislature intended to diminish the State's burden in at least some cases involving the revocation of probation for non-payment of fees by shifting the issue of inability to pay to the probationer as an affirmative defense. However, it is not clear how far the Legislature intended to go. The first 1977 version of § 8(c) suggests that the burden will be shifted only in cases where the motion to revoke probation contains no allegations other than the probationer's failure to pay fees. The second 1977 versions of § 8(c) suggests that the burden will always be shifted when an allegation is included in the motion to revoke probation that the probationer failed to pay fees regardless of the number or type of other allegations contained therein.

The subsequent actions of the 67th Legislature in 1981 indicates that the first 1977 version is the one the Legislature intended to pass. The 1981 version of § 8(c) contains portions of each of the earlier versions. Since the 1981 Legislature retained the word "only" in the new § 8(c) it is logical to assume that they must have intended to limit the burden shift by way of affirmative defense to the probationer to cases where the motion to revoke contains only allegations that the probationer "failed to pay compensation paid to appointed counsel, probation fees, court costs, restitution, or reparations." As a result of this conclusion that version number one of § 8(c) controls, I agree with the Court of Appeals that the affirmative defense of inability to pay does not apply because of the inclusion in the motion to revoke probation of non-monetary allegations. Thus, the State is bound to prove its case under prior law, i.e., ability to pay and intentional non-payment. See *Curtis,* supra; *Hardison,* supra.

The majority calls this the "quirky consequence" of this interpretation. The "quirky consequence" of their interpretation is that we are apparently now empowered *to rewrite statutes.*

The majority concludes that the statute should allow the State to shift the burden of proving inability to pay to the probationer whenever the motion to revoke contains any monetary allegation regardless of what else is included therein. Perhaps the statute *should* do this, but it does not. In order to force the statute to allow this it

must be rewritten and, in the instant case, the majority does not hesitate to do this.

The majority exercises its newfound power by taking into consideration "surrounding circumstances, legislative history, caption of the act and consequences of a particular construction ..." All of these seem to be very useful tools. However, it is not clear what use the majority is making of them.

The majority concludes that the Legislative history of the statute *clearly* reveals that the Legislature intended something other than what they wrote down. However, the Legislative history dictated in the majority opinion is nothing more than a recitation of the procedural history of the bill. I fail to see, and the majority fails to point out, how an outline of this procedure supports their interpretation of the statute.

The caption of the bill reads, in part, "defense in a probation revocation hearing to allegations of failure to pay certain amounts imposed as a condition of probation ... adding subsection (c) to Section 8, Article 42.12 ..." How does this support the majority's interpretation of § 8(c)? I agree that the bill relates to probation revocation for failure to pay fees, but the caption does not support the majority's interpretation that inability to pay is always an affirmative defense to motions to revoke probation which allege failure to pay some fees.

Apparently, "surrounding circumstances" includes two factors. First, the majority argues that the caselaw makes the legislative intent clear. Again, I fail to see how this is true. Relevant caselaw required the State to prove inability to pay and intentional non-payment. *Curtis,* supra; *Hardison,* supra. I agree that the Legislature intended to ease this burden somewhat, but how far did they intend to go? I have already argued that the burden shift was limited to situations where only failure to pay fees is alleged. The majority argues that the burden shift applies to all cases where failure to pay fees is alleged. The majority does not explain how the Legislature's reaction to relevant caselaw supports their position.

Another "surrounding circumstance" relied upon by the majority is their belief that the word "only" is often misused. That may be true, but where is the evidence that it was misused by the Legislature in this case?

This only leaves the "consequence of a particular construction" and this is what we are really talking about here. The majority has determined that the consequence of a literal construction of the statute is illogical and, in order to remedy this, they have rewritten the statute effectively omitting the word "only." Because I do not believe that this is our proper function but is that of the Legislature, I respectfully dissent.

TEAGUE and MILLER, JJ., join.