TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-03-00145-CR






Steve Kotlarich, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 96-432-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 We grant appellant's motion for rehearing. Our opinion and judgment of August 29,
2003, are withdrawn and the following substituted therefor.

 In 1996, appellant Steve Kotlarich pleaded guilty to the offenses of sexual assault and
indecency with a child by exposure. See Tex. Pen. Code Ann. §§ 22.011, 21.11(a)(2) (West 2003). 
Pursuant to a plea agreement, the trial court sentenced appellant to ten years' imprisonment for the
indecency offense, probated. Pursuant to the same agreement, appellant received a fifteen-year
sentence on the sexual assault offense, but was placed on deferred adjudication. In October 1992,
the State filed motions to adjudicate on the sexual assault offense and to revoke probation on the
indecency offense. After a hearing, the trial court found the State's allegations true in both motions,
adjudicated appellant guilty of the sexual assault offense, revoked probation in the indecency
offense, and imposed sentences of fifteen years' imprisonment for the sexual assault offense and ten
years' imprisonment for the indecency offense (to run concurrently). In one issue on appeal,
appellant contends that the evidence was insufficient to show that appellant violated the terms and
conditions of his deferred adjudication. (1) We first discuss appellant's contentions concerning the trial
court's decision to adjudicate on the sexual assault offense.


Deferred Adjudication

 Article 42.12 of the Code of Criminal Procedure controls questions concerning adult
probation and applications to revoke probation. Tex. Code Crim. Proc. Ann. art. 42.12 (West 1979
& Supp. 2001); Phynes v. State, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992). Section 5(b) provides: 


 On violation of a condition of [deferred adjudication] community supervision
imposed under Subsection (a) of this section, the defendant may be arrested and
detained as provided in Section 21 of this article. The defendant is entitled to a
hearing limited to the determination by the court of whether it proceeds with an
adjudication of guilt on the original charge. No appeal may be taken from this
determination . . . .



Id. § 5(b) (West Supp. 2001).

 The United States Constitution does not require a state to provide appellate courts or
a right to appellate review of criminal convictions. Phynes, 828 S.W.2d at 2 (citing McKane v.
Durston, 153 U.S. 684, 687-88 (1894)). As a result, a state may limit or even deny the right to
appeal a criminal conviction. Id. Similarly, nothing in the Texas Constitution guarantees the right
to appeal a criminal conviction; that right is provided only by the legislature. Id.

 An appellant whose deferred adjudication probation has been revoked and who
subsequently has been adjudicated guilty of the original charge may not raise on appeal contentions
of error in the adjudication of guilt process. Connolly v. State, 983 S.W.2d 738, 741 (Tex. Crim.
App. 1999) (holding that article 42.12, section 5(b) prohibits defendant from raising a claim of error
in the adjudication of guilt process); Phynes, 828 S.W.2d at 2 (stating that even if appellant's right
to counsel had been violated, he could not use direct appeal as the vehicle by which to seek redress);
Williams v. State, 592 S.W.2d 931, 932-33 (Tex. Crim. App. 1979) ("the trial court's decision to
proceed with an adjudication of guilt is one of absolute discretion and not reviewable by this Court").

 Appellant acknowledges that he is not allowed to challenge the adjudication of guilt
process in a direct appeal. "Nevertheless, he is pursuing this appeal to demonstrate that the trial
court's actions were unreasonable. Once that has been established, Appellant can and will attack the
adjudication order via another more appropriate vehicle." When an appellate court lacks jurisdiction
over an appeal, it may take no action on that appeal other than dismissal for want of jurisdiction. See
Olivo v. State, 918 S.W.2d 519, 523 (Tex. Crim. App. 1996) (when jurisdiction not legally invoked,
power of court to act is absent; may only dispose of purported appeal by dismissal for want of
jurisdiction); Garcia v. State, 45 S.W.3d 740, 742 (Tex. App.--Austin 2001, pet. ref'd); Boyd v.
State, 971 S.W.2d 603, 606 (Tex. App.--Dallas 1998, no pet.). Similarly, we may not reach the
merits of appellant's arguments concerning the decision to adjudicate and we dismiss that part of the
issue presented for want of jurisdiction. We now turn to appellant's contentions concerning the
revocation of his probation for the indecency with a child offense.


Revocation

 While on probation, appellant lived in Lamarque in Galveston County, Texas. (2) One
of appellant's conditions of supervision was that he remain at his residence between the hours of
9:00 p.m. and 6:30 a.m., or within one-half hour of the start or finish of work. At approximately
10:40 p.m. on July 8, 2002, appellant was driving a motorcycle in Pearland, Texas. Officer Steven
Weaver, a police officer with the Pearland Police Department, was patrolling in a marked police
vehicle, operating his freshly calibrated radar system. Weaver passed appellant as appellant was
going in the opposite direction. Based on the radar, Weaver determined that appellant was traveling
63 miles per hour in a 35 mile-per-hour zone. As soon as he passed appellant, Weaver looked in his
rearview mirror and noticed the motorcycle's brake lights flash. In his experience, that meant that
the driver had observed the police vehicle and was slowing down.

 Weaver then turned his police vehicle around, engaged his overhead lights, and
attempted to stop appellant. Appellant turned left onto an intersecting street and began to accelerate. 
Weaver then activated his siren. Appellant ran a stop sign at the next intersection as he turned right. 
Weaver continued the pursuit. Appellant ran a red light and made a left turn, followed by a right. 
Weaver estimated appellant's speed at 70 miles per hour. At this point, the vehicles were traveling
through an older neighborhood which was not brightly lit, making the flashing lights on his car stand
out even more.

 Appellant continued to flee, failed to stop at another stop sign, made another turn,
then finally stopped. Weaver instructed appellant to get on the ground, but appellant did not comply. 
Instead he argued that Weaver should not arrest him. Weaver wrestled him to the ground and
attempted to handcuff him. Appellant repeatedly tried to pull his hands and arms away in an attempt
to avoid being handcuffed. Ultimately, appellant was arrested and charged with evading detention
and resisting arrest. The State filed a motion to revoke on both grounds. (3)

 Appellant testified that he was unaware that Weaver was following him. Appellant
said that he did not hear the siren because he was playing music very loudly. However, Weaver, who
at times was within 100 feet of appellant even before appellant stopped, testified that he did not hear
music coming from appellant's motorcycle. Appellant also admitted he violated curfew. He said
he had had to go check on a complaint about a member of his work crew, (4) but acknowledged that
he was on his way to his girlfriend's house, not his residence, at the time he was stopped. It was
"only logical" to go by his girlfriend's residence and pick up a DVD then instead of the next day. 
He explained that his brake lights flashed, not because he saw the police officer, but because he had
just accelerated to "pop a wheelie" going over railroad tracks and was slowing down. Appellant said
that he knew what a Pearland police vehicle looked like.

 A member of appellant's motorcycle club, who was familiar with appellant's driving
habits, testified that appellant normally observed speed limits, stopped at stop signs, and adhered to
other traffic signals when he operated his motorcycle. Several friends testified that he had worked
hard at building his business and expressed their favorable opinions about his character.

 Marion Kimbro of the Williamson County Probation Department testified about her
interview with appellant and about a supplemental pre-sentence investigation report that was
introduced into evidence. Appellant told her that the arresting officer "overreacted." He also said
that he had tried to "sell" the officer on the idea of not arresting him. She expressed concern that the
level of supervision in Galveston County was too lax; for example, she was concerned that appellant
employed members of his sex offenders therapy group in view of the condition of his probation that
he not associate with other offenders. In appellant's opinion, the curfew aspect of his probation
should be lifted, as well as the sex-offender notification sign on the residence. The report further
disclosed that when appellant was a juvenile, he attempted to outrun the police in a motor vehicle
in an attempt to avoid a citation for speeding. Finally, she testified that he inappropriately referred
to her as "dear" during the interview.

 The burden of proof in a probation revocation is by the preponderance of the
evidence. Cobb v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); Willis v. State, 2 S.W.3d
397, 398-99 (Tex. App.--Austin 1999, no pet.). In reviewing a claim of insufficiency of the
evidence, the appellate court must determine whether the greater weight of credible evidence before
the trial court in the revocation proceeding created a reasonable belief that a condition of probation
had been violated as alleged in the motion to revoke. Id. As trier of fact, the trial court is the sole
judge of the credibility of witnesses and the weight to be given their testimony. See Garrett v. State,
619 S.W.2d 172, 174 (Tex. Crim. App. 1981); Mauney v. State, 107 S.W.3d 693, 695 (Tex.
App.--Austin 2003, no pet.)

 We view the evidence presented in a revocation proceeding in the light most
favorable to the trial court's ruling. See Garrett v. State, 619 S.W.2d at 174; Willis v. State, 2
S.W.3d at 398-99. The standard of review of a trial court's determination that a probation violation
occurred is abuse of discretion. Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

 A person commits the offense of evading detention if he intentionally flees from a
person he knows is a peace officer attempting lawfully to arrest or detain him. Tex. Pen. Code Ann.
§ 38.04 (West 2003); see Rodriguez v. State, 578 S.W.2d 419, 419 (Tex. Crim. App. 1979). A peace
officer may lawfully detain an individual whom the officer reasonably suspects has operated a motor
vehicle at a rate in excess of the posted speed limit. McVickers v. State, 874 S.W.2d 662, 664 (Tex.
Crim. App. 1993); Chapnick v. State, 25 S.W.3d 875, 877 (Tex. App.--Houston [14th Dist.] 2000,
pet. ref'd). The trial court, as the trier of fact in a revocation proceeding, may infer intent on the part
of the defendant from the facts and circumstances developed as evidence during the hearing. See
Stanfield v. State, 718 S.W.2d 734, 738 (Tex. Crim. App. 1986). The intent to flee may be inferred
from the actions of the defendant during the pursuit, such as speeding and committing other traffic
violations. See Rogers v. State, 832 S.W.2d 442, 443-44 (Tex. App.--Austin 1992, no pet.) (officer
in marked car activated overhead lights, motioned driver to stop, driver looked at him and
accelerated; during ensuing pursuit radar showed that motorcycle was traveling approximately 95
miles per hour and passed two vehicles in no passing zone before stopping).

 Appellant contends that he was unaware that Weaver was attempting to detain him
and so was not intentionally fleeing. (5) However, Weaver testified that, in his experience as a police
officer, the flash of brake lights meant that appellant was intentionally braking due to being
conscious of a police presence. Appellant then kept traveling well in excess of the speed limit and
ran one red light and two stop signs. Weaver was in a marked car, using his lights and siren, and at
times was within one hundred feet of the motorcycle. Weaver testified that he would catch up with
appellant at intersections, but "lose him on straightaways."

 Appellant provided alternative explanations for his behavior. However, the trial judge
determines the credibility of witnesses. See Garrett, 619 S.W.2d at 174. Based on the evidence in
front of him, the court could have concluded that appellant had been conscious that he was violating
the curfew term of his probation, a term that appellant had decided was inappropriate. (6) Further,
appellant was motivated to flee. He had a reason to avoid a traffic ticket. (7) A second motive for
fleeing was to avoid documentation in the form of a citation that he was in violation of the terms of
his supervision. At the time of the offense, appellant was on his way to his girlfriend's house. He
ultimately stopped about a block from her residence. The fact finder could reasonably infer that
appellant had attempted to evade Weaver and reach his girlfriend's residence.

 The court had before it evidence that appellant behaved in a way consistent with a
person who was aware that a police officer was trying to stop him and fled to avoid apprehension. 
There was evidence that he committed multiple traffic violations, had reason to flee, had done so
before, and had a destination that he was trying to reach. All of this evidence allows an inference
that appellant intended to flee from the officer. See Rogers, 832 S.W.2d at 443-44. The police
officer initially had a reasonable suspicion that appellant was operating a motor vehicle at an
excessive speed based on his radar, thus authorizing the officer lawfully to detain appellant. See
Chapnik, 25 S.W.3d at 877. After the chase began, he witnessed more traffic violations. Viewing
the evidence in the light most favorable to the ruling, see Garrett, 619 S.W.2d at 174, the greater
weight of the evidence the trial court found credible created a reasonable belief that a condition of
probation had been violated. See Cobb, 851 S.W.2d at 873.

 Accordingly, we overrule that part of the issue contending that the evidence was
insufficient to support the revocation of his probation on the indecency with a child offense and
affirm the trial court's judgment.



 

 David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: October 9, 2003

Do Not Publish
1. Appellant complains specifically in his motion for rehearing that he intended by his one issue
in his brief to address both the sufficiency of the evidence to support the revocation of his probation
on the indecency with a child offense and the decision to adjudicate on the sexual assault offense. 
Accordingly, we address both on rehearing.
2. Galveston County was providing courtesy supervision for appellant. Appellant lived with his
parents in La Marque.
3. In its brief on appeal, the State concedes the evidence was not sufficient to support the
resisting arrest offense.
4. Appellant owned a business that cleaned up parking lots.
5. There is no dispute that Weaver was a peace officer.
6. The pre-sentence report also expressed concern that appellant did not report the arrest to his
probation officer because he had decided his arrest did not constitute a violation of the conditions
of his probation because he "felt he did nothing wrong." The report continued by expressing concern
that appellant held the opinion that he circumstances under which he committed his original offenses
could never happen again. The court could have concluded that appellant was very good at
rationalizing his behavior and not given credibility to his explanation of events.
7. A single traffic offense has been held to be adequate to support probation revocation. See
Albritton v. State, 680 S.W.2d 80, 81 (Tex. App.--Fort Worth 1984, no pet.).