

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-330-CR

DERICK EUGENE SLOAN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Derick Eugene Sloan appeals the trial court's order adjudicating him guilty after finding that he had violated conditions of his deferred adjudication community supervision. In one issue, Sloan argues that the trial court abused its discretion by adjudicating him guilty because

---

[1]... *See* Tex. R. App. P. 47.4.

the evidence that he violated his community supervision was legally and factually insufficient. We affirm.

## II. Factual and Procedural Background

Sloan pleaded guilty to aggravated assault with a weapon and received five years' deferred adjudication community supervision and a $750 fine. The State moved to adjudicate, arguing that Sloan had violated five conditions of his community supervision by (1) committing two offenses—fleeing from a peace officer and refusing to give the officer his identifying information; (2) failing to report in person to the supervision officer for two consecutive months; (3) failing to pay appropriate court costs for a total of fifteen months; (4) failing to submit monthly payments on his $750 fine for a total of twelve months; and (5) failing to pay his monthly community supervision fee for a total of fifteen months.

At the hearing on the State's motion to adjudicate, Sloan pleaded not true to all of the allegations in the State's motion. Regarding the first violation of community supervision alleged by the State—that Sloan fled an officer and refused to identify himself—Officer Noah Bragg, Constable for Palo Pinto County, testified that on November 6, 2008, Sloan intentionally refused to give the officer identification while he was trying to lawfully arrest Sloan. Specifically, Sloan passed the officer going sixty miles per hour in a

2

forty-five mile-per-hour zone on a red "ninja-style" motorcycle; Officer Bragg immediately activated his overhead lights and proceeded to go after Sloan. However, Officer Bragg could not catch Sloan, who continued to gain speed, and the officer believed at that point that Sloan was fleeing from him.

Officer Bragg eventually saw the motorcycle parked outside of a gas station, pulled in behind the motorcycle to investigate, and then noticed Sloan exiting the station's convenience store. He approached Sloan, identified himself as the officer whom Sloan had passed earlier, and asked Sloan to remove his helmet and produce identification. Sloan refused, put gas in the motorcycle, and then started the engine. Officer Bragg ran over to the motorcycle, grabbed the keys, and asked Sloan to step back from the motorcycle and produce identification. Sloan refused again, demanded that Officer Bragg return his keys, and slammed Officer Bragg's truck door shut, preventing Officer Bragg from accessing his radio. Officer Bragg told Sloan that he was under arrest, and Sloan ran. Graham Police Officer Casey Scobee eventually caught Sloan, and with the assistance of another officer, handcuffed Sloan and placed him in the back of his patrol unit.

Cindy Collins also testified for the State regarding the offense and explained that she had observed Sloan, her ex-husband, pass Officer Bragg and had later seen Sloan in the back of a police car. However, Sloan

3

testified that it was not him who had sped past Officer Bragg that day and that Officer Bragg had never asked him for his name, but had only asked for his driver's license, which he could not find. Sloan also testified that Officer Bragg never asked him to remove his helmet, that Sloan never slammed the door shut on Officer Bragg's truck, and that his hands were in front of him the whole time. When asked his reason for running, Sloan testified that Officer Bragg did not have his lights on, that he did not know why Officer Bragg was there, and that he had a rough past with the police.

Regarding the second violation, failure to report in person, Steve Richie, Sloan's community supervision officer, testified that Sloan did not report in person in September or October 2008. Richie filed a violation report with the district attorney's office. Sloan testified that he tried to contact Richie to reschedule an appointment but that Richie was on vacation and would never return his calls. Sloan testified that he called over thirty times. Richie could not recall whether he went on vacation in September 2008, but if he had, he was unsure whether a call from Sloan would have been reported. However, he testified that, if Sloan talked with another officer, the officer probably would have recorded the call.

Richie also testified as to violations two through five, regarding Sloan's failure to submit monthly court-ordered payments for court costs, his fine,

and the community supervision fee.  According to Richie's testimony, Sloan failed to make his court-ordered payments for court costs and a community supervision fee for May 2007, August through December 2007, January through April 2008, and June through October 2008.  Richie also testified that Sloan failed to make his monthly payments toward the court-ordered fine for October through December 2007, January through April 2008, and June through October 2008.  Additionally, Richie stated, "[W]e hardly ever just violate on the money unless they just flat refuse to pay."  Richie acknowledged that Sloan was having difficulty making payments because of his divorce expenses.

After hearing all of the testimony, the trial court found the State's allegations to be true.  The trial court adjudicated Sloan guilty of aggravated assault with a deadly weapon and sentenced him to fourteen years' confinement and a $1,500 fine.  Sloan filed a notice of appeal; he also filed a motion for new trial, which was overruled by operation of law.

### III.  Adjudication of Guilt Supported by Record

In his issue, Sloan argues the trial court abused its discretion by adjudicating him guilty because the evidence was legally and factually insufficient to show that he violated his community supervision.

## A. Standard of Review

We review an order revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Cherry*, 215 S.W.3d at 919. The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Cherry*, 215 S.W.3d at 919. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App.

6

[Panel Op.] 1980); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd.).

A factual sufficiency review is inapplicable to revocation proceedings. *See Becker v. State*, 33 S.W.3d 64, 65–66 (Tex. App.—El Paso 2000, no pet.); *Joseph v. State*, 3 S.W.3d 627, 642 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Liggett v. State*, 998 S.W.2d 733, 735–36 (Tex. App.—Beaumont 1999, no pet.).

Inability to pay is an affirmative defense that the defendant must raise and prove by a preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c) (Vernon Supp. 2009); *Stanfield v. State*, 718 S.W.2d 734, 737–38 (Tex. Crim. App. 1986). If the defendant raises the issue and meets his burden, the burden shifts to the State to prove that he intentionally failed to pay. *Stanfield*, 718 S.W.2d at 738.

B. Analysis

We determine that a preponderance of the evidence does not support Sloan's inability to make the missed payments but does support the alleged violations of conditions (3), (4), and (5) of his community supervision regarding payment of costs and fees. *See Cardona*, 665 S.W.2d at 493; *Moore*, 605 S.W.2d at 926. Sufficient evidence supports the trial court's judgment.

7

## IV. Conclusion

We affirm the trial court's judgment.

CHARLES BLEIL
JUSTICE

PANEL: MCCOY and MEIER, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 31, 2010