**Warfield Raymond WIKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–0273–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 12, 1987.

James M. Brooks, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Bill Adkins Camp, Jeff Ross, Harris County Asst. Dist. Attys., Houston, for appellee.

Before JACK SMITH, DUGGAN and COHEN, JJ.

## OPINION

COHEN, Justice.

This is an appeal from the trial court's order revoking appellant's probation and sentencing him to ten years imprisonment for indecency with a child.

Appellant's two points of error contend that the trial court erred in revoking his probation because the evidence was insufficient to prove that he had the ability to

pay, and intentionally failed to pay, his supervisory fees.

Appellant was placed on probation on February 10, 1984. The terms of his probation required that he pay a $15.00 supervisory fee each month, beginning March 12, 1984, and that he pay a $300.00 fine and $46.00 in court costs in monthly installments of $35.00. Sheryl Cook, probation liason officer for the 263rd District Court, testified that appellant made payments in March, April, and June of 1984, and that "two or three payments were made timely."

On August 2, 1984, a motion to revoke appellant's probation was filed. It alleged that, among other things, appellant was delinquent in paying his supervisory fees and fines. Appellant was arrested, apparently shortly thereafter, and remained in custody until April 24, 1985, when he was released on a $1,000.00 personal recognizance bond. Appellant's bond resulted from an agreement that he become current in the required probation payments. On June 27, 1985, appellant made an $80.00 payment, and was told, by Cook, that, unless he paid the remaining $426.00 by July, his probation would be revoked.

On July 26, 1985, appellant paid the $426.00. Cook then told him that the $426.00 he paid did not include his July supervisory fee, but that he would be allowed to make the July payment when he reported to his probation officer in August. On the same day, Cook assigned appellant to a new probation officer, Dee Dee Burg, who was located at a new office at Greenbriar and O.S.T. Cook testified that she gave appellant a map to the new office, and that the map contained instructions indicating that payments could only be accepted if made by cashiers check or money order. She also testified that she did not read the instructions to appellant, and that she did not know if he had read them. Appellant testified that he did not read them. Prior to this time, appellant had reported to a probation officer, and paid his fees, at the downtown office. He testified that he mailed the first payment, and that

he paid the others personally, in cash, when he met with his probation officer.

The motion to revoke probation was dismissed on July 30, 1985.

On August 14, 1985, appellant reported to Burg, as required. Cook testified that Burg's notes of the meeting recited:

Defendant reports no arrest or violation. Reports residence and employment outside Harris County. Issued an appropriate travel permit, reviewed conditions of probation and expectations, with defendant. Defendant reports having appointment at Baylor Sex Offender on November 5, 1985. *Discussed fees,* defendant presented copies of past check stubs, *defendant appeared cooperative, but having many questions.* [N]ext office visit September 12th. (emphasis added.)

Appellant testified that, on August 14, 1985, he attempted to make a $30.00 cash payment, but that the cashier refused to accept it, and told him that he could only pay by cashier's check or money order. He testified that he discussed it with Burg, and that she told him to get a money order, add $15.00 for the following month, and make a $45.00 payment (for July, August, and September) when he reported on September 12, 1985.

Cook testified that Burg's notes for September 12, 1985, said, "I have a notation of a phone call from defendant to his probation officer that he is hitchhiking into town from Alvin. States he's trying to keep appointment but not sure when he will arrive."

Appellant testified that on September 12, 1985, his employer agreed to let him leave work at 3:00 p.m., in order to meet with his probation officer. His employer told him that if he had to leave any earlier, not to bother to return to work, because he would no longer have a job. Appellant testified that he had to hitchhike because he did not have a car or a driver's license, and because he had not been able to find anyone to give him a ride.

Appellant testified that he called Burg several times to let her know how far he had gotten, and that the last time he spoke to her was at 6:20 p.m., from Fuqua and

Telephone Road. Appellant testified that she asked him if he would be at the office by 7:00 p.m., because she would only be there until then, and appellant said he would try. Burg told him to call her at the next possible convenient time. At 6:55 p.m., appellant called from Park Place and Telephone, but did not talk to Burg because there was no answer. He continued to call every few minutes until 7:15 p.m., and then walked back to Alvin. Appellant was arrested on September 14, 1985, at 8:30 a.m. on an unrelated charge that was later dismissed.

On October 28, 1985, while appellant was still incarcerated on the unrelated charge, the present motion to revoke probation was filed. It alleged that appellant had committed an aggravated sexual assault, and had "not made a payment [of his supervisory fee] for the months of August and September 1985 as directed by the court and is presently $45 in arrears." On April 3, 1986, at the hearing on the motion to revoke, the State abandoned the first paragraph and proceeded solely on the second paragraph.

Appellant testified that, on September 12, 1985, he had a money order for $45 made out to the Harris County Adult Probation Department, and that, between his arrest on September 14, 1985, and the hearing on April 3, 1986, he had made several attempts to make the $45 payment; specifically, (1) that he asked Edward McGinty to pick up his paycheck, to cash it, and to send him the money; (2) that he asked McGinty to go to his residence, a trailer owned by his employer and located behind the nursery where he worked, and to bring him his pocket calendar, because the money order was inside the pocket calendar; (3) that he asked John Bowman, a friend named Glenda, his parents, his grandparents, and several other friends to borrow the money, to cash his check, or to bring him the money order; (4) that he asked his employer, Mr. Boden, to send him the pocket calendar from the trailer, but that Mr. Boden told him that he did not know what was in the trailer because he had let other people move into the trailer; and (5) that he tried to ask Mr. Abera and several other people, but that they refused his collect calls from the jail.

On cross-examination, appellant testified that Glenda could not help him because she was not allowed to use the car; that McGinty would not help, because he said he did not want to get involved and did not want to go on Boden's property; that none of his family lived in Houston and that his grandparents were disabled; that he bought the money order at the Kroger store in Alvin; that McGinty had seen the money order; and that, while he was in jail, neither Burg nor Cook had contacted him regarding the payment.

It was undisputed that appellant was aware that he was required to make $15.00 monthly supervisory payments, that he did not make the payments for July, August, and September 1985, and that he was employed earning approximately $525.00 per month in July and August of 1985.

The trial court found that appellant "failed to pay a supervisory fee for the months of August and September 1985," revoked appellant's probation, and sentenced him to ten years confinement. This finding was the sole basis for the revocation of probation.

■ The State is required to prove that appellant's failure to pay his supervisory fees was intentional. *Stanfield v. State*, 718 S.W.2d 734, 738 (Tex.Crim.App. 1986). When, as here, the only allegation is that the probationer failed to pay fees, inability to pay is an affirmative defense, which the probationer must prove by a preponderance of the evidence. Tex.Code Crim.P.Ann. art. 42.12, sec. 8(c) (Vernon Supp.1987). The evidence is reviewed in a light most favorable to the court's order. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim.App.1979).

The State contends that *Stanfield* controls this case, because there the court stated:

It is axiomatic that facts and circumstances attending a given act or omission may reveal intent. One who has the ability to pay that which he is required to pay but does not, *without more*, leaves a

fact finder with a strong inference that his failure is intentional. (Emphasis added.)

*Id.* at 738. The State reasons that, because there is evidence that appellant knew that he was required to make the payments, because he was employed, and because he had made up prior arrearages, the trier of fact could have inferred that his failure was intentional. We disagree.

This case, unlike *Stanfield,* is not "without more." The sentence in *Stanfield* immediately preceding the above quoted language states:

> Casting inability to pay as an affirmative defense to failure to pay means that ability to pay is considered a factor relevant to the element of intent, and we note that *when inability is not raised as an affirmative defense* the State has discharged its burden without difficulty. (Emphasis added)

*Id.,* at 738. In *Stanfield,* unlike the instant case, inability to pay was not raised as an issue. *Id.,* at 735, footnote 2.

■ Appellant's failure to pay in July and August was excused by his probation officers on the condition that he pay the following month. Appellant testified that he tried to pay on September 12, but could not reach the probation office before it closed. He could not have left his job earlier without losing it and thereby violating another condition of his probation. The undisputed evidence established that appellant had no car and no driver's license. On September 14, he was incarcerated, and was therefore unable to make any payments because of financial and physical restraints placed on him by the State.

We conclude that the State did not prove, by a preponderance of the evidence, that appellant's failure to pay was intentional, or that the failure to pay violated the terms of the probation order.

■ As in *Cotton v. State,* 472 S.W.2d 526 (Tex.Crim.App.1971), the conditions of probation required only that the monthly supervisory payments begin on a specified date. They did not require that the payments be made on any specific day of the month, and the probation department did not have the power to set or alter the terms of the Court's orders by requiring them to be paid on a specific date. *Hall v. State,* 452 S.W.2d 490, 492 (Tex.Crim.App.1970). Appellant's incarceration, two days after his scheduled meeting with Burg, prevented him from making the payments anytime in September, and his testimony, that he attempted to make the payments even after his incarceration, was undisputed.

■ We further observe that neither the conditions of probation nor any statute prohibits cash payments or requires that payments be made by money order. The probation department's acts of refusing cash and requiring payment by money order further amended the court ordered conditions of probation, an act that only a judge may perform. *Id.*

We finally note that, according to Cook's testimony, appellant was jailed for "months and months" pending dismissal of the first motion to revoke probation. While the record does not disclose the precise length of this confinement, Cook's testimony raises the question of whether a jailed probationer must still comply with the conditions of probation. If incarceration pursuant to a motion to revoke excuses a probationer from the duty to pay probation supervisory fees, then appellant would not have owed the fees that he paid for the months that he was confined between June 1984 and April 1985. If, as the record indicates, appellant paid for 2 or more of those months, he would have fully paid or overpaid his fees, and would not have been in arrears, as the court found.

There is authority suggesting that a jailed probationer is excused from complying with conditions of probation, including paying supervisory fees. *See Guerra v. State,* 518 S.W.2d 815, 817 (Tex.Crim.App. 1975) (defendant in jail is not "on probation"); *Matthews v. State,* 478 S.W.2d 943 (Tex.Crim.App.1972); *Cotton v. State,* 472 S.W.2d 526; *Hall v. State,* 452 S.W.2d at 493. We have found no cases directly in point on this issue. However, our holding does not rely on any apparent payment or overpayment of fees.

■ In *Pool v. State,* 471 S.W.2d 863 (Tex.Crim.App.1971), the court held that the trial court abused its discretion in re-

voking probation, when the evidence that the probationer was unable to pay was not refuted by the State. In *Basaldua v. State,* 558 S.W.2d 2, 7 (Tex.Crim.App.1977), the court held that the revocation of probation was improper "if the probationer establishes that he is unable to make such payments." Revocation of probation for failure to pay fees, when the probationer is unable to pay fees, denies due process of law. *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Stanfield,* n. 2. *See also Patterson v. New York,* 432 U.S. 197, 206, 97 S.Ct. 2319, 2324, 53 L.Ed.2d 281 (1977).

Probation officer Cook corroborated part of appellant's testimony and did not materially contradict any of it. The State presented no evidence indicating that appellant intentionally failed or refused to pay the fees. Appellant's testimony regarding the refusal to accept cash and the other reasons for his inability to pay was not impeached or contradicted, and was not utterly lacking probative value. We hold that appellant carried his burden and proved, by a preponderance of the evidence, that he was unable to pay.

The points of error are sustained.

The judgment is reversed, and the cause is remanded.