Kevin Lee **GREATHOUSE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–98–00808–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 22, 2000.

Annette M. Henry, Houston, for Appellant.

Julie Klibert, John B. Holmes, Houston, for State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and ANDELL.

## OPINION

MICHAEL SCHNEIDER, Chief Justice.

A jury convicted appellant, Kevin Lee Greathouse, of two counts of theft. The jury assessed punishment at confinement for 10 years, but as recommended by the jury, appellant's sentence was probated and he was placed on community supervision for 10 years. The State filed a motion to revoke community supervision. The trial court revoked the appellant's community supervision and sentenced appellant to ten years in prison. We reverse.

### Factual Background

Appellant's wife, Gail Greathouse, worked as an office manager/secretary at Trend Energy. Appellant and his wife embezzled money from the business. American Express credit cards were obtained without the owner's permission and numerous unauthorized purchases were charged to the corporate credit card, including a trip to Paris. In addition, fraudulent wire transfers were used to steal money, and forged checks with the owner's signature were used for personal purchases, including a new Jeep Grand Cherokee. In all, appellant and his wife stole approximately $375,000 from Trend Energy.

The jury recommended probation. As a condition of probation, the court ordered appellant to pay restitution of $179,587, approximately half the amount stolen, starting in November 1997. The court set restitution at the rate of $11,600 [1] a month. For the first five months of his community supervision, appellant paid between $100 and $120 dollars each month towards his restitution, but never paid the full monthly amount of $11,600. In April 1998, the State brought a motion to revoke community supervision. The court found that appellant did not have the ability to pay $10,000 a month in restitution for the first count of theft and that it would be unreasonable to expect him to do so. The trial court revoked probation in that count of theft and sentenced the appellant to 10 years in prison. The trial court changed the restitution amount in the other count of theft from $1,600 to $500 a month, which was to be abated during the time appellant was incarcerated.[2] The trial court's reasoning was explained on the record:

Obviously, if a person has restitution so great that there's no way that they [sic] could pay that amount, do they [sic] then have the right to say, "Since it's impossible for me to make these payments, I shouldn't be punished or have my probation revoked for not making these payments?" Well, of course the problem with that is then that one is excused for one's crime if the restitution amount is so great that a person can't pay it, and that doesn't seem just.

Now, should a person be obliged to pay as much as they [sic] can? My reasoning is that, yes, *they should be obliged to pay as much as they can.* Now, the problem here is who is going to decide that? Well, ultimately, the Judge; and this would give, one might argue, the Judge the ability to squeeze this person and to keep them [sic] in a state of poverty for all the years of their probation.

While this is possible, one would hope that the Judge would not do that, but that the Judge would be reasonable in asking that restitution be paid so that at least in some measure the injured—injured parties can be made whole.

Now if Mr. Greathouse had been paying to the best of his ability, the extent of his ability, as judged by me, then I would say, "Yes, even though you haven't made the full payments—uh—I will excuse you because you are doing your best." *Obviously, it would be unreasonable to ask you or any normal person to pay amounts in excess of $10,000 per month, but, it is not unreasonable for you to pay as much as you can toward those amounts.*

(emphasis added).

### Legal Analysis

In his first point of error, appellant argues the trial court abused its discretion by revoking appellant's probation when appellant did not have the ability to pay $10,000 a month. In appellant's second point of error, appellant urges that the

---

**1.** Appellant had to pay $10,000 a month restitution on one of the theft charges and $1,600 for the other theft charge.

**2.** No appeal was taken from the trial court's action on this second count.

trial court abused its discretion by imposing vague and indefinite conditions of probation, challenging the implied order that appellant pay "as much restitution as possible." Finally, appellant argues that the trial court abused its discretion by imposing a condition of probation that was unreasonable on its face. We reverse the judgment and order the motion to revoke to be dismissed.

### 1. Appellant's Ability to Pay Restitution

In his first point of error, appellant argues it was error for the trial court to revoke probation when appellant did not have the ability to pay $10,000 a month. We review the order revoking probation under an abuse of discretion standard. *See Hendley v. State*, 783 S.W.2d 750, 752 (Tex.App.—Houston [1st Dist.] 1990, no pet.). In making this determination, we examine the evidence in the light most favorable to the trial court's order. *See Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim.App.1981).

If the State can prove a violation of a condition of probation by a preponderance of the evidence, the order of revocation will be supported. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App. 1980). If the State fails to meet its burden of proof, the trial court abuses its discretion in issuing an order to revoke probation. *See Reid v. State*, 834 S.W.2d 125, 126 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

The State argues that appellant may not complain about a condition of probation for the first time on appeal, citing *Speth v. State*, 6 S.W.3d 530, 535 (Tex.Crim.App. 1999). But the State's reliance upon *Speth* is erroneous. Appellant is not complaining about the initial conditions of probation. Appellant argues that, when the trial court affirmatively found he did not have ability to pay $10,000 a month in restitution, it was error for the court to *sua sponte* impose new and vague conditions of probation instead of denying the motion to revoke probation. We agree.

At a community supervision revocation hearing, the inability to pay restitution is an affirmative defense for a defendant to prove. *See* TEX.CODE CRIM. P. ANN. art. 42.12 § 21(c) (Vernon 2000); *Stanfield v. State*, 718 S.W.2d 734, 738 (Tex.Crim.App.1986); *Friedl v. State*, 773 S.W.2d 72, 73 (Tex.App.—Houston [1st Dist.] 1989, no pet.). Once the issue of inability to pay is raised, the burden of proof shifts to the State to prove that appellant's failure to pay was intentional. *See id.* Appellant paid, on average, $108 a month in restitution from November 1997 through March 1998, before the State filed its motion to revoke. During this time period, his total income was $6,215.94.[3] The record is unclear as to what appellant's monthly expenses were, but testimony indicates that his living expenses ranged from $800 to $900 a month, and that appellant was also paying back a bank loan. Appellant testified that he told his probation officer "I'm paying what I can pay" and his probation officer did not indicate that this would be a problem. Appellant met his burden in raising the inability to pay as a defense.

The burden then shifted to the State to prove the failure to pay was intentional. The State presented evidence that appellant had the financial means to pay more than he did. The State suggests that, even after subtracting rent, utilities, health insurance and appellant's other necessary bills, there was approximately $500 to $600 in disposable income available to the appellant. The State points out that appellant used this money for various personal luxuries instead of paying his restitution. For example, appellant was able to maintain a gym membership, give small cash gifts to his family at Christmas, pay

---

**3.** Appellant presented evidence that he earned $7 an hour working for Ludco, Inc. He later resigned from Ludco, Inc. and worked on his father's chicken farm, earning between $1000 and $1200 a month.

more than the minimum amount due on his personal loan and credit card bills, take trips to Houston, and have satellite TV ordered at his home with this money.

■ However, an appellate court must examine whether the appellant was able to pay the restitution as initially imposed. *See Friedl,* 773 S.W.2d at 74. The trial court found that appellant could not pay $10,000 a month, and the State offers no evidence to the contrary. The State suggests an inference of intentional non-payment can be made if one has the ability to pay but does not. *See Stanfield,* 718 S.W.2d at 738. But appellant never had the ability to pay the full amount of restitution initially imposed. Thus, no inference of intentional non-payment can be made, and the State failed to meet its burden in establishing appellant's failure to repay the $10,000 was intentional. When evidence that the probationer is unable to pay is not refuted by the State, and the trial court revokes probation, it is an abuse of discretion. *See Basaldua v. State,* 558 S.W.2d 2, 7 (Tex.Crim.App. 1977); *Pool v. State,* 471 S.W.2d 863, 863 (Tex.Crim.App.1971). The trial judge should have denied the motion to revoke probation. Instead, the trial judge *sua sponte* amended the conditions of probation. We find this to be an abuse of discretion and sustain appellant's point of error.

**2. The Vague and Unreasonable Probation Condition**

In point of error two, appellant argues the "implied order requiring appellant to pay as much as he could pay" is vague and indefinite, making the conditions of probation unenforceable and void. In point of error three, appellant argues the conditions of probation were unreasonable on their face. We sustain these points of error.

■ A trial court has broad discretion in imposing conditions of probation. However, the conditions must be reasonable, and must be designed to "protect or restore the community, protect or restore the victim, or punish, rehabilitate or reform the defendant." *See* Tex.Code Crim. P. Ann. art. 42.12 § 11(a); *Speth v. State,* 6 S.W.3d 530, 533 (Tex.Crim.App.1999). If restitution is ordered, the restitution amount set by the court must be just. *See Martin v. State,* 874 S.W.2d 674, 676 (Tex. Crim.App.1994). The trial judge must "consider the ability of the defendant to make payments" in ordering restitution. *See* Tex.Code Crim. P. Ann., art. 42.12 § 11(b) (Vernon 2000). Furthermore, conditions of probation must be "clear, explicit, and unambiguous so that the probationer understands what is expected of him." *Todd v. State,* 911 S.W.2d 807, 817 (Tex. App.—El Paso 1995, no writ). The probationer must know with certainty what he is being asked to do. *See Curtis v. State,* 548 S.W.2d 57, 58 (Tex.Crim.App.1977).

■ In this case, the condition of probation required appellant to pay $10,000 a month. Behind the condition was an implied order to "pay as much as he could" as determined by the judge. We do not find this to be a clear and unambiguous standard. The appellant did not receive notice that he would have to pay as much as he could, and he had no way to calculate such an amount. Revocation of probation for failure to pay fees and restitution when an appellant is unable to pay the total amount denies due process of law. *See Bearden v. Georgia,* 461 U.S. 660, 673, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983) (holding that a revocation of probation for "failure to pay a fine or restitution" when the probationer did not have the ability to pay is "contrary to the fundamental fairness required by the Fourteenth Amendment"); *Friedl,* 773 S.W.2d at 72 (citing *Wike v. State,* 725 S.W.2d 465, 470 (Tex. App.—Houston [1st Dist .] 1987, no pet.)).

In *Arterberry v. State,* the Tyler Court of Appeals upheld the revocation of community supervision where a trial judge felt the appellant "had the money to do more than what [he] did." 800 S.W.2d 580, 582 (Tex.App.—Tyler 1990, no pet.). However, we distinguish this case. In *Arterberry,* the appellant only had to pay a $405.50

**460**

fine, plus a $35 per month supervision fee. *See id.* The State established that appellant had $509 a month in disposable income after expenses. *See id.* When an appellant has an ability to pay, it is easy to conclude his non-payment was intentional. *See, e.g., Stanfield,* 718 S.W.2d at 738 (explaining when inability is not raised as an affirmative defense, the State can easily show intentional failure to pay by establishing one had the ability to pay, but did not). However, in the case before us today, appellant does not have enough disposable income to pay his restitution, and so the same conclusion cannot be reached.

In *Duke v. State,* the San Antonio Court of Appeals did not find it to be an abuse of discretion for a trial court to revoke appellant's probation because there was an intentional failure to pay fees. 2 S.W.3d 512, 517 (Tex.App.—San Antonio 1999, no pet.). In *Duke,* appellant owed court costs, administrative fees, and court-appointed attorney fees. *See id.* In addition, he had to perform community service or "community restitution." *See id.* Appellant did not make any payments and did not perform any community service. The court upheld the revocation of probation, noting that based on the evidence introduced, appellant could have made a partial payment or could have at least made a good faith effort to attempt some payments. *See id.* In the present case, appellant made partial payments of his restitution amount, and his failure to pay was unintentional. Thus, *Duke* is distinguished.

We find the judge's implied order to "pay as much you can" is vague and unreasonable, and we sustain appellant's second and third points of error.

### Conclusion

We sustain points of error one, two, and three. We reverse the judgment and order the motion to revoke be dismissed.