**Opinion issued January 7, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

---

**NOS. 01-12-00525-CR**
**01-12-00526-CR**

---

**LARRY BLACKMAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1299620 & 1307863**

---

## MEMORANDUM OPINION

Appellant, Larry Blackman, was charged by indictment with two felony assaults: aggravated assault of a family member with a deadly weapon and assault of a family member by choking.[1]  Appellant pleaded guilty to both charges,

---

[1]    *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (Vernon 2011).

without an agreed recommendation regarding punishment. The trial court deferred adjudication and placed appellant on community supervision for five years. Before the end of the probationary term, the State moved to adjudicate appellant's guilt on several occasions, the last of which the trial court granted. The trial court assessed punishment at 20 years' confinement for the offense of aggravated assault of a family member with a deadly weapon and 10 years' confinement for the offense of assault of a family member by choking.

Appellant brings four points of error, two of which challenge the constitutionality of the admission into evidence of a community supervision officer's testimony and two of which challenge the trial judge's neutrality and impartiality. We affirm.

## BACKGROUND

On April 26, 2011, an indictment was filed in which a grand jury found that probable cause existed to believe that appellant assaulted his wife by threatening her with imminent bodily injury by using and exhibiting a knife. *See* TEX. PENAL CODE ANN. § 22.02(a)–(b) (Vernon 2011). On July 26 of the same year, an indictment was filed in which a grand jury found that probable cause existed to believe that appellant assaulted his wife by impeding the normal breathing and circulation of her blood by applying pressure to her throat. *See* TEX. PENAL CODE

ANN. § 22.01(b)(2)(B) (Vernon 2011).  Appellant waived his right of trial by jury and pleaded guilty to both of the assault offenses on August 16, 2011.

With each of his pleas of guilty, appellant submitted a motion for community supervision. The trial judge granted the motions, deferring adjudication and placing appellant on community supervision for concurrent five-year terms in each case.  Appellant's community supervision included the conditions that he would participate in a General Educational Development (GED) program, participate in a domestic violence treatment program called a Batterer Intervention Prevention Program (BIPP), commit no offense against the laws of Texas, and not present himself in person at his wife's home address.

In the trial court's admonishments, appellant indicated by signature that he understood that a violation of any condition of his deferred adjudication may cause the trial court to proceed with an adjudication of guilt on the original charges.  The State filed several motions to adjudicate appellant's guilt, each alleging that appellant had violated multiple conditions of his community supervision.  The trial judge granted the State's final motion to adjudicate guilt on both assault offenses.  The trial judge sentenced appellant to 20 years' confinement for the aggravated assault of a family member offense and 10 years' confinement for the assault by choking offense.  Appellant's sentences were to run concurrently.

At trial, the State's only witness was a community-supervision officer, who testified over appellant's objection from documents relating to appellant's community supervision. Following the community-supervision officer's direct and cross-examination, appellant testified in his own behalf. At the conclusion of appellant's testimony, the trial judge questioned appellant. Among the topics covered during the trial judge's questioning were whether appellant visited his wife in violation of one of the community-supervision conditions, the nature of appellant's relationship and history with his wife, and his prior convictions and guilty pleas.

## RIGHT TO CONFRONTATION

At trial, the State called only one witness: Alicia Ibarra, a community-supervision officer. The State asked Ibarra about documents relating to appellant's community supervision. Before Ibarra testified about the documents, however, appellant's trial counsel objected, asserting that such testimony was inadmissible under the purview of *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527 (2009) and *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), because the records were actually prepared by appellant's supervising community-supervision officer, not Ibarra. The State responded by explaining that Ibarra's testimony about the community-supervision documents was admissible because the documents were offered as business records that were kept in the normal course

4

of business and were in Ibarra's control. The trial judge concurred with the State and overruled appellant's objection, noting that it was preserved for appeal.

In his first and second issues, appellant asserts that the trial court abused its discretion in admitting Ibarra's testimony regarding the community-supervision documents. Appellant argues that such admission was improper, asserting that he was deprived of the fundamental right to "confront the witnesses against him" that is guaranteed by the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1068 (1965) (explaining that the Fourteenth Amendment incorporates the Sixth Amendment's right to confrontation); *see* U.S. CONST. amends. XI, XIV.

## A. The Nature of Community-Supervision Revocation Proceedings

The State responds by citing a line of cases holding that, because a revocation hearing is an administrative proceeding, not a judicial proceeding, the Confrontation Clause does not apply. *See Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist] 2007, no pet.); *Diaz v. State*, 172 S.W.3d 668, 672 (Tex. App.—San Antonio 2005, no pet.); *Mauro v. State*, 235 S.W.3d 374, 376 (Tex. App.—Eastland 2007, pet. ref'd); *Smart v. State*, 153 S.W.3d 118, 120 (Tex. App.—Beaumont 2004, pet. ref'd).

However, all of these cases cited by the State were decided before *Ex parte Doan*, 369 S.W.3d 205 (Tex. Crim. App. 2012), in which the Texas Court of

Criminal Appeals disavowed its prior cases holding that a community-supervision revocation hearing was merely an administrative proceeding, holding instead that:

> [a] Texas community-supervision revocation proceeding involves the application of law to past facts that remain static. It is conducted according to judicial rules before a trial judge, not an administrative agency. Applying administrative law—the law that governs the decision-making process of administrative agencies—to revocation hearings has no basis in the Code of Criminal Procedure. Community-supervision revocation proceedings are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings.

*Id.* at 212. We acknowledge that *Doan* did not decide the issue of whether a defendant has a right to confront witnesses during a community supervision revocation, and no case since *Doan* has revisited that issue.[2] However, for purposes of this opinion, we will assume without deciding, that a defendant can raise a Confrontation Clause objection in a community-supervision revocation proceeding. Thus, we turn to the issue of whether appellant has properly done so in this case.

### B. Business Records Exception as Applied to Confrontation Clause Objections

The State argued at trial that the trial court should overrule appellant's Confrontation Clause objection because, "Your Honor, these are business records. She's allowed to testify from the records that are kept in the course of this

---

[2] *Ex parte Doan* involved the issue of whether two prosecuting attorneys from different counties could be considered the same party for *res judicata* purposes. *Id.* at 213.

probation case." It is true that records kept in the course of business are an exception to the hearsay rule, *see* TEX. R. EVID. 803(6), however that does not necessarily resolve appellant's Confrontation Clause objection. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (recognizing that hearsay and Confrontation Clause are separate objections).

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. The Confrontation Clause does not apply to all out-of-court statements introduced at a trial; it applies only to hearsay that is "testimonial" in nature. *Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 51–52, 124 S. Ct. 1354, 1364 (2004)).

Typically, documents filed in compliance with the public-records or business-records exceptions to the hearsay rule are non-testimonial. *See Crawford*, 541 U.S. at 56, 124 S. Ct. at 1367 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); *Azeez v. State*, 203 S.W.3d 456, 466 (Tex. App.—Houston [14th Dist.] 2006), *rev'd on other grounds*, 248 S.W.3d 182 (Tex. Crim. App. 2008) ("Generally, business records

7

are non-testimonial."). This is because business and public records were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Bullcoming v. New Mexico*, ___ U.S. ___, ____n. 6, 131 S. Ct. 2705, 2714 n. 6 (2011) (quoting *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539–40 (2009)). But business or public records may be testimonial; for example, business records are testimonial if they contain a "factual description of specific observations or events that is akin to testimony," *Segundo v. State*, 270 S.W.3d 79, 106–07 (Tex. Crim. App. 2008), or if the business entity's "regularly conducted business activity is the production of evidence for use at trial," *Melendez–Diaz*, 557 U.S. at 321, 129 S. Ct. at 2538.

## C. Preservation of Error

In his brief, appellant argues that "while a few of the entries [in the community-supervision records] were routine notations of the absence of an event, e.g. the failure of the appellant to report in March, 2012, others of more consequence were factual descriptions which pertained to some event and 'akin to testimony.'" Thus, appellant acknowledges that portions of the community-supervision records could be admitted as business records because they were not testimonial, but other portions were testimonial, thereby violating the Confrontation Clause despite their qualification as a business record.

However, "[w]hen an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection." *See* TEX. R. EVID. 105; *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995). Furthermore, the objecting party must request that the objectionable portions "be deleted or covered." *Wintters v. State*, 616 S.W.2d 197, 202 (Tex. Crim. App. 1981). Otherwise, an "objection directed toward the report as a whole [i]s properly overruled." *Id.*

In this case, as in *Wintters*, appellant failed to request specific deletions of specific items in the exhibit. *See Wintters,* 616 S.W.2d at 202. Instead, appellant objected "to any testimony from [the community-supervision records[.]" Because portions of the records were admissible, appellant's objections directed toward them as a whole were properly overruled. *See Wintters*, 616 S.W.2d at 202; *see also Pinkney v. State*, 848 S.W.2d 363, 367 (Tex. App.—Houston [1st Dist.] 1993, no pet.) ("Here, once the trial court overruled the appellant's objection to the entire document, the appellant should have objected to the specific parts of the document that were inadmissible hearsay *and ask[ed] the court to delete those parts of . . . [the] statement.* The appellant, therefore, waived the error concerning the admission of the statements.") (emphasis added).

Because appellant's objection was to testimony from *any* portion of the community-supervision records, and by appellant's own argument, portions of the

records were admissible, appellant's objection to the whole document did not preserve the error complained of on appeal.

We overrule issues one and two.

## ABANDONMENT OF JUDICIAL NEUTRALITY

In appellant's third and fourth points of error, he alleges that the trial judge engaged in questioning that precluded impartiality and neutrality. Appellant argues that such alleged questioning was improper, and that the resulting error was "fundamental."

### A. Background

At the close of the evidence at the hearing, the following exchange occurred between appellant and the trial court:

> [Court]: Let me ask you something before you say something. So, if your wife were here to testify, is she a liar about everything? Did she lie about you putting a knife to her face and lacerating her face?
>
> [Appellant]: I'm going to say yes, sir.
>
> [Court]: Is it true you went over to her place? Yes or no?
>
> [Appellant]: Did I go over to her place?
>
> [Court]: Uh-huh, where this new aggravated assault that you're being accused of, is it true you went there?
>
> [Appellant]: No, sir.
>
> [Court]: Where did it happen?
>
> [Appellant]: She said that it happened there.

10

[Court]: So, she's lying about that?

[Appellant]: Yes. I wasn't staying there at that time.

[Court]: Okay. You didn't visit there?

[Appellant]: No, sir. I didn't visit there. But I'm going to be honest with you. I'm not trying to lie to you or nothing.

When you release me, maybe two or three days after you release me, she brought my kids to me. I took my kids to the park and we did try to reconcile. So, I love my kids and my wife, (defendant crying) trying to reconcile.

[Court]: Why would you love her? She's a liar. Why would you love her?

[Appellant]: She told me the reason she kept coming to my probation, this is the same—exact same thing. I went to prison in 2003. She kept calling my—

[Court]: So, you went to prison because of her before?

[Appellant]: Calling my probation officer.

[Court]: Wait a minute. You went to prison before for another aggravated assault?

[Appellant]: No, because she kept calling my probation officer.

[Court]: Is it aggravated or assault?

[Prosecutor]: It is aggravated assault with a deadly weapon.

[Court]: So, she was lying that time you went to prison?

[Appellant]: Yes, sir.

[Court]: So, she's just lying all the time about this, huh?

11

[Appellant]: She was continuing right now—

[Court]: I just want to find out. She lied the first time you went to prison for aggravated assault against her; is that right?

[Appellant]: Yes. She was being dishonest. It didn't happen.

[Court]: And then you got another aggravated assault in here and I gave you probation on it; is that right?

[Prosecutor]: Yes, your Honor.

[Court]: And now you have another aggravated assault against her. Okay. Do you have anything else to say?

[Appellant]: Yes, sir.

[Court]: Well, let's get to it real quickly.

[Appellant]: Your Honor, you said something to me months ago. If I wanted to go down with it, it took this shit for a minute or hour to go down. If I wanted to go down with the shit, it wouldn't take no year or eight months to do.

What I am trying to say is sometimes, you know you take stuff that you don't normally do because you don't have money to fight. You don't have money to fight; so you plead out. I didn't have money to fight certain things, you know, and I tried to—

[Court]: Wait. Wait. So, now you are saying you pled guilty all these times, even though you really weren't guilty? Is that what you are saying?

[Appellant]: That's what I am telling you.

[Court]: So, you were lying to me at that point?

[Appellant]: No.

12

[Court]: Wait. Wait. Wait. When I asked you if you were guilty and if you were pleading guilty because you really are guilty, you said— what did you say? What did you say? Because I always ask it: Are you pleading guilty because you are guilty?

[Appellant]: Yes.

[Court]: And what did you say?

[Appellant]: I said, Yes, sir.

[Court]: So, you lied to me?

[Appellant]: I wasn't—

[Court]: Wait. Wait. That's one time. That's just the last time when you got probation. I gave you probation when you were already on probation, is that correct?

[Appellant]: No, sir.

[Prosecutor]: No, your Honor.

[Court]: He had gone to prison for aggravated assault and then I decided to give you a probation, concurrently probation, and the second—the other charge was?

[Prosecutor]: Assault family member, choking.

[Court]: So, choking her as well. Not just with a weapon. I gave you probation on both of those to give you another chance. So, you told me you were guilty at that time. Were you lying to me then when you said that? It's just a yes or no. When you told me that you were guilty of choking her and that you were guilty of using a weapon against her and I gave you probation, were you lying when you said that you were guilty then? Yes or no?

[Appellant]: I was being dishonest.

13

[Court]: You were being dishonest. So, you were lying then. So, you were lying when you got your first prison sentence for aggravated assault. You were lying when you got probation the second and third time.

All right. So, please move your chair back. I have heard enough at this point.

## B. Standard of Review

We review an order revoking community supervision under an abuse of discretion standard. *Greathouse v. State*, 33 S.W.3d 455, 458 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). The trial judge is the sole trier of facts, the credibility of the witnesses, and the weight to be given to the testimony. *Hale v. State*, 694 S.W.2d 212, 215 (Tex. App.—Houston [1st Dist.] 1985, no pet.) (citing *Battle v. State*, 571 S.W.2d 20, 21 (Tex. Crim. App. 1978)).

## C. Preservation of Error

In order to preserve error for appellate review about a trial judge's comments during trial, counsel must object, or otherwise bring the complaint to the trial court's attention. *See* TEX. R. APP. P. 33.1. When no objection is made, "remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous." *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978)). While appellant's trial counsel did not object to the trial judge's questions or otherwise attempt to preserve error for

appeal, appellant now asserts that preservation was not necessary because the error was fundamental.

Appellant, citing *Blue v. State*, contends that, because the trial court's error was fundamental, he can complain on appeal even though he failed to object at trial to the trial court's questioning. 41 S.W.3d 129 (Tex. Crim. App. 2000) (plurality opinion).

We begin by noting that *Blue* was a plurality opinion and the court of criminal appeals has held that since "it is not possible to ascertain a majority holding or the narrowest ground or rule that commands a majority of the court," "the *Blue* decision has no precedential value." *Unkart v. State*, 400 S.W.3d 94, 101 (Tex. Crim. App. 2013).

Further, we find that *Blue* is distinguishable. In *Blue,* "at the beginning of the jury selection process, the trial judge apologized to a group of perspective jurors for their long wait." 41 S.W.3d at 130. In making the apology, the trial judge informed the jurors that the defendant was still deciding whether to accept the State's plea offer or go to trial. *Id.* The trial judge further stated that she preferred the defendant to plead, and "we were all trying to work toward that and save you time and cost of time." *Id.* The plurality in *Blue* determined that the trial judge's remarks "'vitiated the presumption of innocence' before the venire, adversely affecting appellant's right to a fair trial." *Id*. at 132. In contrast, this was not a jury

trial, and nothing about the trial court's remarks vitiated the presumption of innocence. Because appellant did not object at trial, nothing is presented for review on appeal.

Accordingly, we overrule appellant's third and fourth points of error.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice


Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish. Tex. R. App. P. 47.2(b).