COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| PAUL ORTIZ TREVINO, | § | No. 08-13-00235-CR |
| Appellant, | § | Appeal from the |
| v. | § | 43rd Judicial District Court |
| THE STATE OF TEXAS, | § | of Parker County, Texas |
| Appellee. | § | (TC# CR10-0033) |
| | § | |

## **O P I N I O N**

Paul Ortiz Trevino appeals his conviction of delivery of a controlled substance following revocation of deferred adjudication community supervision[1]  In one issue, he argues the trial court abused its discretion by revoking his community supervision because his circumstances "had improved to such a degree that it was more likely that the [community supervision] could be successfully completed[.]"[2]  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Trevino was indicted for delivery of a dangerous drug, a state jail felony.  *See* TEX.HEALTH & SAFETY CODE ANN. § 483.042 (West 2010).  He waived his right to a jury trial,

---

[1] Trevino is also appealing the trial court's revocation of deferred adjudication community supervision in a companion case that was tried concurrently.  That case has been assigned appellate Cause No. 08-13-00234-CR.

[2] Trevino raises this same issue in the companion case identified in footnote number one.

judicially confessed, and entered a negotiated guilty plea. The trial court found that the evidence supported a guilty finding, but deferred adjudicating guilt and placed Trevino on deferred adjudication community supervision for five years beginning in May 2010. The terms and conditions of Trevino's community supervision[3] required that he, among other obligations:

(1) report in person and by mail each month;

(2) report for administrative review when notified;

(3) timely report any criminal charges and changes in address or employment;

(4) work;

(5) pay $29 per month towards $1,360 in court costs, fines, and legal fees until paid in full;

(6) pay $30 per month in community supervision fees;

(7) complete 160 hours of community service; and

(8) attend, participate in, and successfully complete a drug offender education program.

Alleging Trevino violated these terms and conditions, the State moved to revoke his community supervision in February 2013.[4]

Several months later, the trial court held a hearing on the State's motion, at which Trevino entered a plea of not true. During the hearing, two witnesses testified: Trevino and Rebecca Gibson, the custodian of records for the Parker County CSCD. Through Gibson's testimony, the State introduced Trevino's community supervision records into evidence. After considering the evidence and the parties' arguments, the trial court found that Trevino violated the terms and

---

[3] The original terms and conditions were modified twice to impose additional obligations.

[4] The State subsequently withdrew the allegation that Trevino failed to timely report an arrest for failing to maintain financial responsibility.

conditions of community supervision as alleged in the State's motion, adjudicated him guilty of the charged offense, and sentenced him to two years' confinement.

## ADJUDICATION OF GUILT

Trevino argues the trial court abused its discretion by revoking his community supervision and sentencing him to two years' confinement because he was obtaining treatment for the mental and physical disabilities that prevented him from complying with the terms and conditions of community supervision. We disagree.

### *Standard of Review*

We review an order revoking community supervision for an abuse of discretion and, in so doing, view the evidence in the light most favorable to the trial court's order. *Greathouse v. State*, 33 S.W.3d 455, 458 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd). We will uphold the order if the State proves by a preponderance of the evidence that the defendant violated a condition of probation as alleged in the motion to revoke. *Id*.

### *Discussion*

The trial court did not abuse its discretion by granting the State's motion to revoke Trevino's community supervision. When given the appropriate deference and viewed in the light most favorable to the trial court's ruling, the evidence adduced at the hearing on the State's motion establishes that Trevino violated at least one of the terms and conditions of his community supervision as alleged in the State's motion.

As noted above, the State alleged Trevino violated numerous terms and conditions of his community supervision, including failing to complete 160 hours of court-ordered community service. At the revocation hearing, Gibson testified Trevino was required to complete 160 hours

3

of community service at the rate of sixteen hours per month and was informed of this obligation repeatedly while on community supervision. She further testified Trevino completed only three and one-half hours of community service. When Gibson was asked if Trevino explained to her why he was having difficulty completing his community service, she related Trevino claimed "he was too tired and depressed to get out of bed, and that he had back pain." Gibson also related Trevino was asked on several occasions to provide current medical documentation supporting his claim. According to her, Trevino ultimately submitted outdated medical documentation, which nonetheless failed to demonstrate he was unable to perform community service.

Trevino admitted he was required to perform 160 hours of court-ordered community service but completed only three and one-half hours. Echoing Gibson's previous testimony, Trevino explained he was unable to complete more hours because of physical and mental pain. Trevino did not offer any medical evidence in support of his claim and, on cross-examination, acknowledged providing Gibson with outdated medical documentation.

The unrebutted evidence established that Trevino failed to complete 160 hours of court-ordered community service at the rate of sixteen hours per month despite having been on community supervision for nearly three years. The trial judge apparently concluded that Trevino had been capable of performing the required community service despite Trevino's protestations of poor health. It was within the trial judge's purview to reach this conclusion because, at a revocation hearing, the trial judge: (1) is the sole trier of the facts; (2) determines the credibility of the witnesses and the weight of their testimony; and (3) determines whether the allegations in the motion to revoke are true. *Taylor v. State*, 604 S.W.2d 175, 179 (Tex.Crim.App. 1980); *Langford v. State*, 578 S.W.2d 737, 739 (Tex.Crim.App. 1979)(opin. on reh'g). In light of the

4

state of the evidence and the deference accorded to the trial court, we conclude that the State proved by a preponderance of the evidence that Trevino failed to complete his court-ordered community service at the required rate. This violation provides a valid basis for revocation of community supervision and for upholding the trial court's revocation order. *See Sanchez v. State*, 603 S.W.2d 869, 870-71 (Tex.Crim.App. 1980)(holding that the violation of one condition of probation, when several violations are raised by the State and found to be true by the trial court, is sufficient to support the trial court's order revoking probation).

Trevino contends the mental and physical disabilities that prevented him from complying with the terms and conditions of community supervision limited his ability to work and, therefore, meet his court-ordered repayment. According to Trevino, "[t]he absence of funds runs throughout this case as the main reason, other than physical pain why the community supervision violations occurred." Proceeding on the theory that his inability to pay court costs, restitution, fines, and fees impacted his ability to comply with the terms and conditions of community supervision, Trevino argues revocation based on his inability to pay violated his right to due process. To support his argument, Trevino relies on the aforementioned *Greathouse v. State.* Trevino's reliance on *Greathouse* is misplaced, however.

*Greathouse* stands for the proposition that, when the State is unable to refute evidence that the probationer is unable to pay fees, court costs, fine, or restitution, a trial court abuses its discretion by *sua sponte* imposing new and vague terms of probation in a revocation hearing and revoking community supervision based on these new conditions. *See* 33 S.W.3d at 457-59 ("Revocation of probation for failure to pay fees and restitution when an appellant is unable to pay the total amount denies due process of law."). There, the probationer established his inability to

5

pay $10,000 per month as restitution on one of the theft counts, as required by the original community supervision order, and the State did not prove the probationer's failure to pay was intentional. *Greathouse,* 33 S.W.3d at 457-59. But rather than deny the motion to revoke community supervision, as it should have done, the trial court *sua sponte* amended the conditions of community supervision to require the probationer to pay "as much restitution as possible." *Id.* at 458-59.

Putting aside for the moment the question whether *Greathouse* even applies in this case given the absence of evidence that Trevino's inability to pay impacted his ability to perform community service, to the extent *Greathouse* does apply, it is distinguishable in two important respects.

First, in *Greathouse*, the probationer met his burden in proving the affirmative defense of inability to pay by presenting evidence of his income and expenses, including rent, utilities, health insurance, and other necessary bills. *Id.* at 458. Because the probationer met his initial burden, the burden then shifted to the State to prove the failure to pay was intentional. *Id.* Here, by contrast, the trial court could have found that Trevino did not meet his burden to prove by a preponderance of evidence that he was unable to pay. *See Stanfield v. State*, 718 S.W.2d 734, 737 (Tex.Crim.App. 1986)("the probationer has the burden of producing evidence and the ultimate burden of persuasion on the issue of inability to pay"). Trevino testified he was unable to pay any of his court-ordered financial obligations because he was not employed. He also testified his wife "was the one that had to carry [him]" and his mother helped him by "provid[ing] stuff like a place to stay, shampoo. Just things like that." But Trevino not only failed to present any evidence substantiating his claims, such as testimony or documents evidencing sources of income or

expenses, but he also further undermined his claim of inability to pay by testifying he did have the ability to pay but did not do so for unidentified reasons:

> [TREVINO]: Yes -- yeah, because right now the way that everything is, I can afford it now. Before, I couldn't.

> [DEFENSE COUNSEL]: Okay. Now, from looking at your probation performance in a historical perspective, what assurances can you give the Judge that you can do well on it in the future?

> [TREVINO]: The only thing I could say is from the last -- my ankle monitor, I actually was up to date on paying.

> [DEFENSE COUNSEL]: Right.

> [TREVINO]: I was -- I had just -- I had just – that's when I started kind of taking my medication, and then I ran out. I couldn't afford to get it. So, at the end, yeah, I was trying. And before, I guess -- before I got taken to jail, I guess the probation officer had asked me. Because when I came to jail, I did get bonded out.

> [DEFENSE COUNSEL]: Right.

> [TREVINO]: And he asked me how come I couldn't pay it towards there. And I told him that I would have paid it towards the -- my probation, but I guess it didn't work out like that.

Second, in *Greathouse*, the trial court found that the probationer could not pay $10,000 per month, and the appeals court concluded that the probationer "never had the ability to pay the full amount of restitution initially imposed[,]" which was $179,587.00. 33 S.W.3d at 457, 459. Implicit in both courts' determinations was the belief that the amount of restitution initially imposed was unreasonable on its face given the probationer's financial circumstances. He was earning, at the most, $1,200 per month. *Id.* at 458 & n.3. Here, by contrast, there is no suggestion that Trevino did not have the ability to pay the full amount of court-ordered repayment initially imposed—$1,360 in court costs, fines, and legal fees in installments of $29 per month until paid in full and $30 per month in community supervision fees—because that amount was

7

unreasonable on its face given Trevino's financial circumstances. The record, the pertinent portions of which the trial court took judicial notice of at the revocation hearing, indicates that Trevino was receiving $426 every two weeks in unemployment benefits when placed on community supervision.

Trevino has failed to demonstrate the trial court abused its discretion by revoking his community supervision.

Trevino's issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

January 14, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)